BOND AND MORTGAGE GUARANTEE COMPANY, Respondent, *v.* UPLAND REALTY COMPANY and Others, Defendants, Impleaded with CLARENCE A. SPARKS, Appellant, and TITLE GUARANTEE AND TRUST COMPANY, Respondent.

First Department, May 2, 1919.

Mortgage — action of foreclosure by guarantor of payment — contract of guaranty, under which depositary of payments from purchasers of portion of mortgaged realty was authorized to pay claims against mortgagor, construed — broker having claim against mortgagor proper party defendant — counterclaim — right of broker to enforce payment against depositary.

In an action by the guarantor of the payment of a mortgage to foreclose the same, it appeared that the president of the mortgagor realty company conducted an auction sale of about two-thirds of the land upon which the mortgage was a lien.   The land was sold without any agreement on

the part of the holder of the mortgage to give releases therefor. Thereafter the president of the mortgagor to secure releases of the lots sold entered into an agreement with the plaintiff by which the latter guaranteed the mortgage in consideration of the assignment to him of all bonds and mortgages received from the purchases at the auction sales, and the guaranty by the president of the mortgagor of the payment of said bonds and mortgages, together with other consideration. It was further agreed that all sums paid by the purchasers of lots and the proceeds of an award assigned to the plaintiff should be paid to a depositary which was authorized to apply the same to the payment of brokerage charges for services rendered to the president of the mortgagor and to the payment of other items.

The plaintiff claimed that the depositary was only *authorized* to pay the aforesaid brokerage claim and was not *directed* to pay it, and that, therefore, no right of action accrued to the broker to enforce said claim either against the depositary or the plaintiff to which the depositary had paid the balance of the moneys.

*Held*, that the broker was properly made a party to the foreclosure action and his counterclaim for brokerage charges may be considered;

That under the agreement the depositary was given no discretion as to whether or not the different claims mentioned should be paid and the contract between the mortgagor, liable for all of said claims, and the plaintiff authorizing the depositary to pay said claims was equivalent to a contract directing their payment.

Since the contract was made for the benefit of the broker by the president of the mortgagor who was in privity with him by reason of liability for services rendered, it may be enforced without any assignment or special authorization from the debtor.

APPEAL by the defendant, Clarence A. Sparks, from so much of the judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Bronx on the 18th day of December, 1917, upon the decision of the court after a trial at the Bronx Special Term, as dismisses his counterclaim upon the merits.

*Richard T. Greene* of counsel [*Daniel S. Murphy* with him on the brief; *Greene, Hurd & Stowell,* attorneys], for the appellant.

*Harold Swain* and *Benjamin G. Bain* of counsel [*Harold Swain,* attorney for plaintiff; *Hamilton C. Rickaby,* attorney for Title Guarantee and Trust Company], for the respondents.

SMITH, J.:

The action is brought to foreclose a mortgage. The mortgage was originally given by the Upland Realty Company

and was to secure the sum of $190,000. This mortgage the plaintiff had guaranteed. At the time of the contract in question the mortgage was owned by the Mutual Life Insurance Company. Patrick Ryan was the president of the Upland Realty Company. While this mortgage was a lien for the full amount upon the land, Patrick Ryan conducted an auction sale upon which he sold about two-thirds of the land. The land was sold without any agreement on the part of the Mutual Life Insurance Company to give releases therefor. Upon the auction sale the provisions were in substance that about one-third should be paid in cash and the balance by mortgage at five per cent upon the land sold. After having made these sales, Ryan went to the Mutual Life Insurance Company and tried to get their releases. They refused, however, to give the releases except upon the full payment of the mortgage or full security. Ryan then went to the plaintiff to endeavor to make some arrangement with it by which the plaintiff should take over this blanket mortgage and give the releases upon the property sold at auction.

Upon the 9th day of August, 1915, an agreement was entered into between Patrick Ryan, party of the first part, and the plaintiff, party of the second part. It recited this mortgage as held by the Mutual Life Insurance Company. It recited the auction sales, and proceeded:

" WHEREAS in order to consummate such sales, it is necessary to obtain releases from the Mutual Life Insurance Company of the lots so to be conveyed and it is also necessary to pay up certain taxes and other liens against the property, and

" WHEREAS the payment of the mortgage held by the Mutual Life Insurance Company is guaranteed by the Bond and Mortgage Guarantee Company, and

" WHEREAS the Mutual Life Insurance Company is unwilling to release said lots, unless the payment of the indebtedness due it shall be secured to its satisfaction, and

" WHEREAS the said Patrick Ryan is interested in said Upland Realty Company as the principal stockholder thereof, and it is to his interest that the sales made at auction shall be fully consummated, and

" WHEREAS he is unable to either pay off in full the mort-

gage held by the Mutual Life Insurance Company or to give it other security satisfactory without the help of the Bond and Mortgage Guarantee Company, and has requested the Bond and Mortgage Guarantee Company to make such arrangements that the premises sold to purchasers at auction may be conveyed to them, as provided in the terms of sale."

It was thereupon agreed that the Upland Realty Company should assign to the plaintiff all bonds and mortgages received for the purchase at the auction sales, and said Ryan guaranteed the payment of said bonds and mortgages; as well as the balance unpaid on the existing bond and mortgage, and said Ryan agreed to and did assign to the plaintiff all his interest in the capital stock of the Patrick Ryan Construction Company, of which he was substantially the sole owner, subject, however, to a certain mortgage existing thereupon, and said Ryan agreed to deliver to the plaintiff a mortgage for $75,000 upon certain land in the town of Southeast, county of Putnam, which land, however, was already subject to a mortgage of $75,000, and it was provided that said bond and mortgage should be held as collateral to the obligations of the Upland Realty Company, and said Ryan agreed to transfer to the plaintiff a certain award for opening West One Hundred and Seventy-second street, amounting to about $15,000, and further agreed that he, the Upland Realty Company, the corporation owning the land upon which the supplemental mortgage was given, and the construction corporation, in which the stock was delivered, would execute any instruments that might be required to carry out the agreement.

The agreement further provided:

" It is further agreed that all sums paid by the purchasers of any of the lots hereinbefore mentioned, and the proceeds of said award shall be paid to Title Guarantee and Trust Company, and said Title Guarantee and Trust Company is authorized to apply the same to the payment of taxes and assessments, the auctioneer's advertising fees, the brokerage and attorneys' charges, including the charge of Title Guarantee and Trust Company for making loan, issuing policies of title insurances to purchasers, and to payment to the Bond and Mortgage Guarantee Company of its premiums for guaranteeing payment of the principal and interest of the

existing mortgage and principal and interest of the purchase money mortgages taken from purchasers at the auction sale. The premium for guaranteeing such mortgages to maturity is to be deducted forthwith.

" The rate of interest named in the bonds accompanying the purchase money mortgages hereinbefore mentioned, is five per cent per annum.   Out of the sums paid to Title Guarantee and Trust Company, there is to be deducted forthwith an amount sufficient to make up to six per cent the rate of interest on said new bonds and mortgages to maturity and upon the balance of the indebtedness secured by the existing bond and mortgage for the further term of three years."

The defendant Sparks was the broker for Ryan. He endeavored to raise some money for him in which he performed his contract, but Ryan failed to carry out the agreement that he had made.   He endeavored to procure additional collateral security for the balance due upon a certain mortgage.   The exact services which he rendered are not material, and it is conceded that the amount claimed was the fair value of those services and that Ryan was indebted to Sparks for this amount and that these were the brokerage fees mentioned in the contract which the Title Guarantee and Trust Company was authorized to pay out of the receipts from the auction sale of these lots.   In pursuance of this contract, the proceeds from the sale of these lots were delivered to the Title Guarantee and Trust Company and were paid upon the several items of indebtedness mentioned in the contract aforesaid, except the item of the brokerage due to Sparks, and, after full payment of these various items, certain moneys were passed over to the plaintiff to apply upon the principal of this bond and mortgage. This amounted to the sum of $4,874.54.   Out of these moneys there was also paid the principal and interest upon the Jackson mortgage to the amount of $7,663.54.   This Jackson mortgage was upon property not covered by the mortgage which was held by the Mutual Life Insurance Company and which was subsequently purchased by this plaintiff, but it covered lots that had been sold at auction.   The amount due thereon did not come within any of the provisions of the agreement between Ryan and the plaintiff, but the mortgage was paid and certain moneys were received from the purchaser of these

lots, and certain mortgages were received, so that the moneys and the mortgages received upon these lots, over and above the amount of this Jackson mortgage, may be deemed to have been applied to the mortgage which the plaintiff holds.

While this was an action to foreclose a mortgage, the defendant Sparks makes no claim of any lien in the mortgaged premises, and the amount of his recovery upon the counterclaim would not in any way diminish the sum to which the plaintiff is entitled. Nevertheless, no objection was made to the consideration of his counterclaim in this case and, moreover, inasmuch as the amount due upon that mortgage is in question, and that amount depends upon whether, of those moneys, Sparks is entitled to payment of a part thereof in satisfaction of his claim, he was properly made a party and his claim may be considered as properly before the court for adjudication.

It will be noticed that in this agreement there is no covenant on the part of this plaintiff that it would secure the release of any of these lots sold at the auction sale, nor is there any agreement that any of the proceeds of these lots shall be paid to the plaintiff in reduction of the amount due upon the mortgage. It is contended, therefore, by the plaintiff that the plaintiff was free to refuse to secure the release of any of these lots, or, if it secured the release of any of these lots it might do so upon terms within its discretion, and, therefore, might exact that all the moneys received by the Title Guarantee and Trust Company under the agreement from the sale of these lots should be paid directly to the plaintiff upon any indebtedness which it might have. This construction, however, is to my mind too technical. The plaintiff was receiving additional security for its liability. It cannot be assumed that additional security was given without any obligation assumed by the plaintiff in consideration thereof. The fair import of the agreement, as shown by the recitals, was that the plaintiff should secure the releases of these lots, and that was in fact the primary purpose of the agreement as shown by these recitals. It may further be fairly implied that, after payment of these specific sums, any balance remaining due should be paid to the plaintiff to be applied upon the mortgage. At the time of the making of this agreement the plaintiff was not the owner of the mortgage. It was simply a guarantor, but,

nevertheless, its interests were in accord with those of the owners, and it was evidently in contemplation of the parties that the plaintiff should take the mortgage from the Mutual Life Insurance Company and carry out the covenants, express and implied, in the plaintiff's agreement with Ryan. In line with this interpretation of the contract, the plaintiff claims that the Title Guarantee and Trust Company was only *authorized* to pay this brokerage claim and was not *directed* to pay it, and that, therefore, no right of action accrued to the defendant Sparks to enforce this claim either against the Title Guarantee and Trust Company or the plaintiff, to which the Title Guarantee and Trust Company paid the balance of these moneys. I cannot interpret the contract, however, as is thus claimed. For aught that appears, the Title Guarantee and Trust Company was a third party uninterested in this transaction, a mere depositary of these moneys received from the sale of these lands at auction. As a mere depositary, it was given no discretion as to whether or not these different claims should be paid, and a contract between the owner of the premises liable for all of these claims and the mortgagee authorizing this mere depositary to pay these claims is in my judgment equivalent to a contract directing their payment. This plaintiff for a lawful consideration had given authority to the Title Guarantee and Trust Company to pay the claim of this broker. It now seeks, in violation of its contract, to withdraw that authorization and appropriate the money itself. Upon the argument counsel for the plaintiff conceded that if the Title Guarantee and Trust Company should pay this brokerage claim the plaintiff could not complain, and such concession clearly stated the rights of the parties. After that authorization given, upon consideration I can find no warrant of law for the plaintiff to use its influence with this depositary to induce it to refuse to perform the acts which it was authorized to perform, and to withdraw the authorization which, as before stated, was given upon a valid consideration to pay a debt which Ryan was lawfully owing to this broker. Ryan might lawfully demand that the Title Guarantee and Trust Company pay the debt that it was authorized to pay, that he might be relieved from this liability, to which

he would still be subject if this claim be not paid out of the moneys thus received by the Title Guarantee and Trust Company. The claim of the defendant Sparks rests, not upon any lien, but purely upon a contract made in his behalf for the payment of these moneys out of this fund. He has obtained an authorization from Ryan to demand this fund from the Title Guarantee and Trust Company, but such authorization was not necessary, as the contract having been made for his benefit by one who was in privity with him by reason of liability to him for his services rendered, may be enforced by him without an assignment, or without any special authorization from his debtor.

The judgment, therefore, so far as appealed from should be reversed, with costs, and judgment directed for the defendant Sparks.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment so far as appealed from reversed, with costs, and judgment directed for defendant Sparks. Order to be settled on notice.